UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

DAVID CARTER,

                                        Plaintiff,                    9:20-CV-0491
                                                                      (TJM/CFH)
                v.

NEW YORK STATE CORRECTIONAL OFFICER
McPHERSON,

                                        Defendant.

─────────────────────────────────────

APPEARANCES:

DAVID CARTER
19-A-1009
Plaintiff, pro se
Great Meadow Correctional Facility
Box 51
Comstock, NY12821

THOMAS J. McAVOY
Senior United States District Judge

**DECISION AND ORDER**

## I.      INTRODUCTION

        Pro se plaintiff David Carter ("plaintiff") commenced this civil rights action on or about

January 15, 2020, by filing a complaint in the Eastern District of New York ("EDNY").  Dkt.

No. 1 ("Compl.").  On or about February 20, 2020, plaintiff filed a motion for injunctive relief,

which was denied by EDNY District Judge LaShann DeArcy Hall on March 4, 2020.  Dkt. No.

2; Docket Entry Dated Mar. 4, 2020.  On March 16, 2020, plaintiff filed a motion to compel the

New York State Attorney General to appear in the action.  Dkt. No. 7.  Without ruling on the

motion to compel, District Judge DeArcy Hall thereafter transferred the action to this District

on April 30, 2020.  Dkt. No. 14.

Upon receipt of the action in this District, the Court issued an Order closing the action because plaintiff had failed to pay the filing fee or file an application to proceed in forma pauperis ("IFP").  Dkt. No. 16.  Plaintiff was directed to pay the filing fee or submit an IFP application if he wished to proceed with this action.  *Id.* at 3.  On May 29, 2020, the Court received plaintiff's IFP application.  Dkt. No. 18.  Plaintiff subsequently filed a second and third motion for injunctive relief.  Dkt. Nos. 21, 23.

The Clerk has forwarded plaintiff's complaint, IFP application, and motions to compel and for injunctive relief to the Court for review.

## II.   DISCUSSION

Where a plaintiff seeks leave to proceed IFP, the Court must determine whether he has demonstrated sufficient economic need to proceed without prepaying, in full, the Court's filing fee of $400.  28 U.S.C. § 1915(a).  The "three strikes" provision of 28 U.S.C. § 1915 ("Section 1915"), however, bars the plaintiff from proceeding IFP if, at the time he commences the action, he filed three or more previous actions that were dismissed as frivolous, malicious, or for failure to state a claim on which relief may be granted.  28 U.S.C. § 1915(g); *Chavis v. Chappius*, 618 F.3d 162, 167 (2d Cir. 2010).  Specifically, Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

2

28 U.S.C. § 1915(g).  The manifest intent of Congress in enacting this "three strikes" provision was to deter the filing of multiple, frivolous civil rights suits by prison inmates.  *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007) (citing *Nicholas v. Tucker*, 114 F.3d 17, 19 (2d Cir. 1997)).  The Second Circuit has defined a frivolous claim as one that "'lacks an arguable basis either in law or in fact.'"  *Tafari*, 473 F.3d at 442 (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).  To determine whether a dismissal satisfies the failure-to-state-a-claim prong of Section 1915, courts look to Rule 12(b)(6) of the Federal Rules of Civil Procedure for guidance.  *Tafari*, 473 F.3d at 442.  The question of whether the dismissal of a prior action constitutes a strike for purposes of Section 1915(g) is a matter of statutory interpretation and, as such, a question for the Court.  *Id.*  If the plaintiff is indigent and not barred by Section 1915(g), the Court must consider the sufficiency of the claims stated in the complaint in accordance with Section 1915(e) and 28 U.S.C. § 1915A ("Section 1915A").

In this case, plaintiff has demonstrated economic need and has filed the inmate authorization form required when inmate-plaintiffs seek IFP status in the Northern District of New York.  Dkt. Nos. 18, 19.  Thus, the Court must determine whether plaintiff has accumulated three strikes for purposes of Section 1915(g) prior to filing this lawsuit and, if so, whether he is entitled to the "imminent danger" exception.  28 U.S.C. § 1915(g); *see also Deleon v. Doe*, 361 F.3d 93, 95 (2d Cir. 2004) (concluding that a court may determine whether a plaintiff has acquired a strike only when the Section 1915(g) issue is ripe for adjudication).

## A.      Determination of "Strikes"

3

The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.  *See* PACER Case Locator, Advance Party Search, https://pcl.uscourts.gov/pcl/pages/search/findPartyAdvanced.jsf (last visited July 30, 2020).[1]  On the basis of that review, Court finds that, as of the date that plaintiff commenced this action, he had acquired three strikes because he filed at least three previous civil actions while incarcerated that were dismissed for failure to state a claim upon which relief may be granted.[2]  *See Carter v. Doe I*, No. 12-CV-9278, Dkt. No. 16 (S.D.N.Y. filed Dec. 19, 2012) (dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915(e)(2)(B)(ii)); *Carter v. Cuomo*, No. 11-CV-5705, Dkt. No. 4 (E.D.N.Y. filed Nov. 17, 2011) (dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915A(b)(1)); *Carter v. Doe*, No. 05-CV-8432, Dkt. No. 16 (attached as Exhibit A) (S.D.N.Y. filed Sept. 30, 2005) (dismissed for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6)).[3]

Because plaintiff accumulated three strikes under Section 1915(g) prior to

---

[1] The Court searched PACER's database using plaintiff's name, David Carter.  That search revealed dozens of actions filed by multiple individuals named "David Carter."  Upon review of each of the actions commenced by a "David Carter," the Court has concluded that the "David Carter" that commenced this action has previously filed at least 64 civil lawsuits in this Circuit while incarcerated.  During its investigation concerning the previous lawsuits filed by plaintiff, the Court also discovered that plaintiff has been in the custody of the New York State Department of Corrections ("DOCCS") before and been assigned the following six DOCCS Department Identification Numbers: (1) 19-A-1009, (2) 12-A-5083, (3) 05-A-2964, (4) 01-A-5428, (5) 99-A-1615, and (6) 81-B-1007.  Plaintiff's New York State Identification Number is 04613486L.

[2] The Southern District of New York ("SDNY") has found that plaintiff has acquired three strikes under Section 1915(g) in at least 30 actions filed by plaintiff in that District.  *See, e.g., Carter v. New York City John Doe Corr. Officer Male Hispanic*, No. 16-CV-3466, Dkt. No. 5 (S.D.N.Y. filed May 10, 2016).

[3] Because of the age of the action, the SDNY's decision dismissing *Carter v. Doe*, No. 05-CV-8432, is not electronically available on PACER.  With the assistance of the Second Circuit's Library, the Court nevertheless obtained a copy of the dismissal order and has attached it to this Decision and Order as Exhibit A. The action was dismissed as time-barred pursuant to Rule 12(b)(6).  *Carter v. Doe*, No. 05-CV-8432, Dkt. No. 16 (attached as Exhibit A).  The dismissal of an action based on the expiration of the statute of limitations constitutes a strike for purposes of Section 1915(g).  *Akassy v. Hardy*, 887 F.3d 91, 95 (2d Cir. 2018).

4

commencing this action, the Court must next consider whether the "imminent danger" exception to that rules applies.

### B.      Applicability of the "Imminent Danger" Exception

Congress enacted the "imminent danger" exception contained in the final phrase of Section 1915(g) as a "safety valve" to prevent impending harms to prisoners otherwise barred from proceeding IFP.  *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002).  Generally, the allegations relevant to this inquiry "are those in which [the plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment."  *Chavis*, 618 F.3d at 165.

"[F]or a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint–in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009); *see also Polanco v. Hopkins*, 510 F.3d 152, 156 (2d Cir. 2007); *Malik*, 293 F.3d at 562-63.  In addition, Section 1915(g) "allows a three-strikes litigant to proceed [IFP] only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges."  *Pettus*, 554 F.3d at 296. In deciding whether such a nexus exists, the Second Circuit has instructed courts to consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would redress that injury."  *Id*. at 298-99 (emphasis omitted).  "[T]hough [a court is] obligated to draw the most favorable inferences that [a pro se plaintiff's] complaint supports, [the Court] cannot invent factual allegations that [the plaintiff] has not pled."  *Chavis*, 618 F.3d at 170.

Here, plaintiff's complaint alleges that he was assaulted by another inmate on an

5

unidentified date, which resulted in a severe injuries to plaintiff's "pelvic area and lower extremities." Compl. at 2. Plaintiff alleges that defendant Great Meadow Correctional Facility ("Great Meadow C.F.") Correctional Office McPherson paid the other inmate to assault plaintiff. *Id.* Prior to that assault, defendant McPherson allegedly harassed plaintiff by confiscating a pair of plaintiff's sneakers and opening plaintiff's "lock/safe" without permission. *Id.* at 3. Defendant McPherson also spread rumors about plaintiff at Great Meadow C.F. and threatened plaintiff with "abuse" and transfer to a different prison cell. *Id.* at 4-5. Plaintiff further alleges that defendant McPherson "presently continues to make threats and appears before [plaintiff's] cell frequently in [a] threatening manner to harass and do odd things to place [plaintiff] in harms [sic] way with [plaintiff's] peers on a daily basis." *Id.* at 5. According to plaintiff, defendant McPherson "appears persistent and having a determined idea to harass, humiliate, assault [plaintiff] and possibly murder [plaintiff] by conspiring with other officers." *Id.*

Notwithstanding the fact that the allegations set forth in the complaint attempt to paint a picture of imminent danger,[4] the allegations are conclusory and vague. Importantly, plaintiff's complaint fails to assert a cognizable cause of action against defendant McPherson because the complaint asserts a claim of harassment, which, on its own, is not sufficient to state a claim under 42 U.S.C. § 1983. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (affirming the dismissal of a claim based only on allegations of verbal harassment

---

[4] Plaintiff further attempts to allege imminent danger in one of his motions for injunctive relief, where he accuses defendant McPherson of "influenc[ing]" other correctional officers to assault him on May 13, 2020. Dkt. No. 21 at 4. (The assault on May 13, 2020, is the subject matter of another lawsuit recently filed by plaintiff in this District. *See Carter v. Doe #1*, No. 20-CV-0576 (N.D.N.Y. filed May 27, 2020).) Other than this conclusory allegation, however, there are no allegations plausibly suggesting that defendant McPherson was involved with the assault in any respect. *See* Dkt. No. 21 at 4.

absent any injury).  To the extent plaintiff's complaint asserts a claim based on the confiscation and/or destruction of personal property, the allegations describe a random and unauthorized act by defendant McPherson.  Compl. at 3.  Under those circumstances, due process requires only a post-deprivation proceeding, and New York provides an adequate post-deprivation remedy in the Court of Claims with respect to property claims by prisoners. *See Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (affirming the dismissal of a due process claim based on allegations that the defendants confiscated the plaintiff's glasses "because of the availability of state court post-deprivations remedies").  For that reason, even assuming that plaintiff's complaint alleged sufficient facts for purposes of Section 1915(g)'s imminent danger provision and the Court granted plaintiff IFP status, the complaint is subject to dismissal without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

In any event, although plaintiff alleges that defendant McPherson appears at his cell "in [a] threatening manner" and that defendant McPherson placed plaintiff in danger of violence by other inmates, plaintiff fails to describe defendant McPherson's specific conduct. Compl. at 5.  Similarly, plaintiff's speculative belief that defendant McPherson is intent on "possibly murder[ing him]" is not plausible even if the rest of plaintiff's allegations are assumed to be true because defendant McPherson's specific conduct as alleged can be characterized only as mildly harassing behavior (e.g., confiscating plaintiff's sneakers, opening a lock/safe in plaintiff's cell).  For purposes of the imminent danger analysis under Section 1915(g), it is not enough to set forth vague and conclusory allegations that do not support a cognizable legal claim.  *See Clark v. Morgan*, No. 15-CV-10994, 2015 WL 1541890, at *2 (E.D. Mich. Apr. 7, 2015) ("Conclusory or vague allegations of some potential danger are insufficient to satisfy the exception to the three strikes rule.") (citing *Thompson v.*

*Sampson*, No. 10-CV-0231, 2010 WL 1027897, at *3 (W.D. Mich. Mar. 18, 2010) ("Certainly, Plaintiff's vague assertion that he would experience the 'likelihood' of imminent danger if he was not released from prison early does not suggest that the danger is real or proximate.")).

In light of plaintiff's three strikes and the complaint's failure to allege imminent danger that is related to a cognizable legal cause of action, plaintiff is barred from proceeding in this action IFP, and his application for IFP status is therefore denied.  If plaintiff wishes to proceed with this action, he must, within 30 days of the filing date of this Decision and Order, pay the full statutory filing fee of $400.  Plaintiff is advised that his failure to timely comply with this Decision and Order will result in dismissal of this action, without prejudice, without further Order from the Court.

### III.     CONCLUSION

**WHEREFORE**, it is

**ORDERED** that plaintiff's application to proceed in the action in forma pauperis (Dkt. No. 18) is **DENIED** pursuant to 28 U.S.C. § 1915(g) because plaintiff has acquired three strikes prior to filing this action and is not entitled to the imminent danger exception; and it is further

**ORDERED** that this action shall be **DISMISSED without prejudice** unless, within 30 days of the date of this Decision and Order, plaintiff pays the Court's full filing fee of $400; and it is further

**ORDERED** that, upon receipt of the full filing fee from plaintiff, the Clerk of the Court shall return the file to the Court for review of the complaint in accordance with 28 U.S.C. § 1915A(b); and it is further

8

**ORDERED** that, if plaintiff fails to remit the filing fee as described in this Decision and Order, the Clerk of the Court shall enter judgment dismissing this action, without prejudice, without further order of the Court; and it is further

**ORDERED** that plaintiff's motions for injunctive relief (Dkt. Nos. 21, 23) are **DENIED without prejudice**; and it is further

**ORDERED** that plaintiff's motion to compel (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

 **DATED:  July 30, 2020**

Thomas J. McAvoy
Senior, U.S. District Judge

9

# EXHIBIT A



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
DAVID CARTER,

                    Plaintiff,

        - against -                    **MEMORANDUM AND ORDER**

CAPTAIN JANE DOE, and
CORRECTION OFFICER ARROYO, #8881,       05 Civ. 8432 (NRB)

                    Defendants.
------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


       <u>Pro</u>   <u>se</u>   plaintiff  David  Carter  ("plaintiff"  or

"Carter")  has  brought  this  action  pursuant  to  42  U.S.C.  §

1983  ("§1983")  against  Correction  Officer  Arroyo  ("Arroyo")

and    an    unidentified    New    York    State    Department    of

Corrections  Captain.   Carter  signed  the  original  complaint

on  July  18,  2005  which  was  filed  on  September  30,  2005.   On

October  17,  2005,  plaintiff  filed  an  amended  complaint.[1]

Arroyo  has  moved  to  dismiss  the  complaint  pursuant  to  Fed.

R.   Civ.   P.   12(b)(6)    ("Rule   12(b)(6)"),    arguing    that

_____

       [1] Plaintiff's amended complaint is substantially the same as
the original complaint; it includes the same requests for relief
and exhibits.   However, in the amended complaint, plaintiff
alleges that a prison grievance representative advised him to
pursue this § 1983 action.   Plaintiff also claims that he was
"shown certain rules that stated that the complaint was late, and
as well was out of the commisioner's [sic] jurisdiction, being
that this incident occured [sic] within another agency."   Pl. Am.
Compl. at 2.

1

plaintiff's claim is time-barred.   In plaintiff's reply to the motion to dismiss, he argues that the statute of limitations should be tolled because he suffered from, and continues to experience, "mental illness and illogical thinking."  Pl. Reply in Opp'n to Def. Mot. at 1.   For the reasons set forth below, we grant defendant's motion to dismiss.

## BACKGROUND[2]

The incident at issue in this litigation occurred on August 23, 2001, when plaintiff was transferred from Rikers Island Correctional Facility ("Rikers") to Bellevue Hospital's Psychiatric Ward ("Bellevue") for a psychological evaluation.[3]   Upon his arrival at Bellevue,

_____

[2] The facts in this section are taken from plaintiff's original complaint and the amended complaint.  For purposes of resolving the Rule 12(b)(6) motion, we assume that the factual allegations in the complaint and amended complaint are true.

[3] In a Consultation Request form dated August 21, 2001, the referring physician from Rikers wrote that plaintiff had a "history of schizoaffective disorder Bipolar type [and] ha[d] been non-compliant [as to] his treatment for the past several weeks."  Compl., Ex. A.   The referring physician described plaintiff as "increasingly agitated and paranoid."  Id.   He also noted that plaintiff "ha[d] been threatening toward staff and his peers," and that Carter had a "history of multiple assaults on his peers."  Id.   Additionally, the referring physician noted Carter's "illogical thought process" and "persistent delusions," that his "impulse control [was] poor," and that Carter had "aggressivity [sic], hostility, [and] combativity [sic]."   Id. The referring physician requested that the physician at Bellevue "evaluate[] [Carter] for [a] higher level of care."  Id.

On August 23, 2001, the date of the alleged incident, the evaluating physician at Bellevue appears to have added certain

plaintiff claims that he asked Arroyo, a corrections officer at Bellevue, if he could use the bathroom. Arroyo allegedly replied, "You don't need to use the bathroom you just want those handcuffs off and shackles." Compl., Ex. C. Plaintiff responded by telling Arroyo to "mind his business." Id. Plaintiff claims that he then informed the second defendant in this case, an unidentified female New York State Department of Corrections Captain, that Arroyo was "interfering with [his] right to use the bathroom." Id. Arroyo allegedly responded by threatening Carter. Id. Carter alleges that Arroyo next assaulted him, while he was fully restrained, as Carter was being transferred to the nineteenth floor of Bellevue. Specifically, Arroyo struck plaintiff on the head, causing him to fall forward and trip over his shackles. See Compl., Ex. B. Plaintiff reported this incident to Captain A. Brimm, who filled out an Injury to Inmate Report dated August 27, 2001.[4] Id.

---

notes to plaintiff's Consultation Request form. He described plaintiff as "cooperative, easily engagable [sic]," and "workable." Id. The form also contains recommendations that Carter be treated with the medications Depakote, Zyprexa, and a "more potent D2 blocker." Id.

[4] A physician assistant completed a portion of the same report. The physician assistant noted that plaintiff did not have any lacerations or bruises, but complained about "tenderness to palpation over occipital lobe." Compl., Ex. B. The physician assistant recommended that plaintiff be returned to housing.

3

Carter's complaint, medical records, and other submissions to this Court make it clear that he suffers from mental illness which has required regular medication and psychiatric treatment.[5] However, the records of this Court also indicate that this mental illness has not interfered with Carter's ability to initiate and pursue federal lawsuits. Carter previously filed two unrelated complaints asserting § 1983 claims on July 19, 2001 and on April 9, 2004 in the Southern District of New York. See Carter v. Guiliani, et al., 02 Civ. 5592 (VM); Carter v. New York City, et al., 04 Civ. 2729 (MBM).

## DISCUSSION

### I. Legal Standards

In resolving a Rule 12(b)(6) motion to dismiss, courts may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993). Moreover, we must accept the truth of factual allegations set forth in the complaint and draw all

---

[5] To support his tolling argument, Carter has submitted a number of medical records to this Court that were received on December 20, 2005, January 6, 2006, January 23, 2006, and January 30, 2006. Based on our review of these medical records, it appears that Carter suffers from schizophrenia.

4

reasonable inferences in favor of the plaintiff. <u>See</u>, <u>e.g.</u>, <u>Allaire Corp. v. Okumus</u>, 433 F.3d 248, 249-50 (2d Cir. 2006).   We are also mindful of the principle that <u>pro se</u> complaints must be liberally construed. <u>See</u>, <u>e.g.</u>, <u>Chance v. Armstrong</u>, 143 F.3d 698, 701 (2d Cir. 1998). However, dismissal under Rule 12(b)(6) is appropriate if the facts clearly demonstrate that plaintiff's claims are time-barred. <u>See</u>, <u>e.g.</u>, <u>Cantor Fitzgerald Inc. v. Lutnick</u>, 313 F.3d 704, 709 (2d Cir. 2002); <u>Ferber v. Citicorp Mortgage, Inc.</u>, 94 Civ. 3038 (AGS), 1996 WL 46874, at *2 (S.D.N.Y. Feb. 6, 1996).

The statute of limitations governing a § 1983 action is the forum state's statute of limitations for personal injury actions. <u>See</u> <u>Owens v. Okure</u>, 488 U.S. 235, 250 (1989). Since this case has been brought in New York, the relevant statute of limitations is three years. <u>See</u> C.P.L.R. § 214(5); <u>Ormiston v. Nelson</u>, 117 F.3d 69, 71 (2d Cir. 1997); <u>Jackson v. Suffolk County Homicide Bureau</u>, 135 F.3d 254, 256 (2d Cir. 1988). However, accrual is governed by federal law, and the statute of limitations for a § 1983 action begins to run when the plaintiff "knows or has reason to know of the harm that is the basis of his claim." <u>Connolly v. McCall</u>, 254 F.3d 36, 41 (2d Cir. 2001) (quoting <u>Eagleston v. Guido</u>, 41 F.3d 865, 871 (2d Cir. 1994).

New York state law also provides the applicable tolling rules in a § 1983 action. See Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2001) (citing Board of Regents v. Tomanio, 446 U.S. 478, 484-86 (1980)); Corcoran v. New York Power Authority, 202 F.3d 530, 543 (2d Cir. 1999) (citing Leon v. Murphy, 988 F.2d 303, 310 (2d Cir. 1993)). In this case, the relevant tolling rule is set forth in § 208 of New York Civil Practice Laws and Rules ("Section 208") which establishes that statutes of limitation may be tolled when a claimant suffers from the disability of insanity. In relevant part, the statute provides:

> If a person entitled to commence an action is under a disability because of . . . insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases . . . the time within which the action must be commenced shall be extended to three years after the disability ceases . . .

Section 208 does not define the term "insanity." However, the New York Court of Appeals established a standard for evaluating the applicability of Section 208 in McCarthy v. Volkswagen of America, Inc., 55 N.Y.2d 543, 450 N.Y.S.2d 457 (N.Y. 1982). McCarthy instructs that the

tolling provision is only available to "those individuals who are unable to protect their legal rights because of an over-all inability to function in society." McCarthy, 55 N.Y.2d at 548, 450 N.Y.S.2d at 460. At the heart of an individual's ability to protect his or her legal rights is the ability to recognize a violation of those rights. See Sanders v. Rosen, 605 N.Y.S.2d 805, 814 (N.Y. Sup. Ct. 1993) ("What the statute clearly contemplates is a disability which prevents a plaintiff from recognizing a legal wrong and from engaging an attorney to rectify it."). Section 208 is to be narrowly interpreted in light of its legislative history, which reveals that the provision is only intended to apply to cases when an individual suffers from a mental disability that is "severe and incapacitating." Swartz v. Berkshire Life Ins. Co., 99 Civ. 9462 (JGK), 2000 WL 1448627, at *5 (S.D.N.Y. Sept. 28, 2000) (citing Dumas v. Agency for Child Development – New York City Head Start, 569 F. Supp. 831, 833 (S.D.N.Y. 1983)).[6]

---

[6] The Advisory Committee deliberately rejected a proposal to substitute the term "mental illness" for the term "insanity" in Section 208. See Callahan v. Image Bank, 184 F.Supp.2d 362, 364 (S.D.N.Y. 2002) (citing McCarthy, 55 N.Y.2d at 548, 450 N.Y.S.2d at 459); Sanders v. Kiley, 91 Civ. 6320 (KMW), 1995 WL 77916, at *5 (S.D.N.Y. Feb. 23, 1995).

In order to be eligible for tolling under Section 208, plaintiffs must also establish that the disability of insanity was continuous during the relevant period. See De Los Santos v. Fingerson, 97 Civ. 3972 (MBM), 1998 WL 740851, at *3 (S.D.N.Y. Oct. 23, 1998). "[I]f the plaintiff had a lucid interval of significant duration, preceded and followed by a period of insanity, the toll is lost and is not resurrected when a plaintiff relapses into insanity." Graboi v. Kibel, 432 F. Supp. 572, 579 (S.D.N.Y. 1977); see also Dumas, 569 F. Supp. at 832-33.

## II.  Analysis

In this case, it is undisputed that plaintiff's cause of action accrued on August 23, 2001, the date of the alleged incident, and that the statute of limitations would normally expire three years later, on August 23, 2004. Plaintiff signed the original complaint on July 18, 2005. Therefore, Carter's § 1983 claim is time-barred unless this Court concludes that the tolling provision of Section 208 applies.

Because a plaintiff's mental state may present a complex factual issue, courts often conduct hearings to determine whether a plaintiff's mental condition during the relevant period meets the standard for insanity under

Section 208. <u>See</u> <u>Wenzel v. Nassau County Police Dep't</u>, 914 F. Supp. 902 (E.D.N.Y. 1996). However, in this case, no hearing is necessary because plaintiff's litigation history and medical records clearly preclude a finding that Carter's mental illness was sufficiently severe or continuous to warrant tolling the statute of limitations under Section 208.

Most significantly, Carter filed and litigated two lawsuits in the Southern District of New York during the three-year period following the incident at issue in this case. These lawsuits demonstrate Carter's ability to advance his own legal interests. Carter did not simply file these complaints, he actively litigated them <u>pro se</u>. The first case, <u>Carter v. Guiliani, et al.</u>, 02 Civ. 05592 (VM), was filed on July 19, 2002, and Carter successfully settled the case with defendants in June 2003. The second case, <u>Carter v. New York City, et al.</u>, 04 Civ. 02729 (MBM), was filed on April 9, 2004 and ultimately dismissed by Judge Mukasey on October 12, 2004. In light of this litigation history, Carter clearly experienced lucid intervals during the statutory period and the tolling provision of Section 208 is not available to him.

Plaintiff's medical records also suggest that he was able to function for significant intervals between August

23, 2001 and August 23, 2004.   These records, dated throughout the three-year period following the alleged incident, document the fact that plaintiff was admitted to psychiatric hospitals for treatment on multiple occasions. While some of the intake documents describe plaintiff as "actively hallucinating," "suicidal," and "threatening," these records also reported "significant improvement."[7] Upon release, plaintiff was repeatedly described as calm, with "thoughts [that] are fairly organized,"[8] as well as "cooperative [and] mood neutral."[9]   While the medical records confirm that Carter has a history of mental illness and has been hospitalized during periods when he stopped taking prescribed medications, they do not suggest that he was continuously unable to function in society or insane for purposes of Section 208.

---

[7] Woodhull Medical and Mental Health Center, "Presenting Problem and History of Present Illness," dated Sept. 27, 2003.

[8] Woodhull Medical and Mental Health Center, "Discharge Summary," dated Oct. 9, 2003.

[9] Metropolitan Hospital Center, Adult Inpatient Psychiatric Services, "Discharge and Aftercare Plan," dated Apr. 28, 2004.

In correspondence to this Court, plaintiff has indicated that he experiences periods of lucid thought. See Pl. Letter to this Court dated Jan. 18, 2006 ("My mental illness has it [sic] spells which is out of my control. I do my best when coherent.").

## CONCLUSION

Because this Court has concluded that plaintiff's §
1983 claim is time-barred, the complaint is dismissed with
prejudice.   The Clerk of the Court is respectfully
requested to close this case.


**IT IS SO ORDERED.**


Dated:     New York, New York
           July 25, 2006


                                  NAOMI REICE BUCHWALD
                                  UNITED STATES DISTRICT JUDGE

11

Copies of the foregoing Memorandum and Order have been
mailed on this date to the following:

Plaintiff
David Carter
# 05-A-2964
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, New York   12788-1000

Counsel for Defendants
Seth D. Eichenholtz, Esq.
Elizabeth M. Daitz, Esq.
Office of the Corporation Counsel
City of New York
100 Church Street
New York, New York   10007